THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS ALBERTO BUSIGÓ CIFRE, Defendant and Appellant.

No. 15769. Argued February 2, 1955.—Decided March 31, 1955.

154

*Luisa María Capó* and *Yamil Galip Frangie* for appellant. *José Trías Monge, Attorney General* and *Rafael L. Ydrach Yordán, Fiscal of the Supreme Court,* for appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Luis Alberto Busigó Cifre was charged in the Superior Court with a violation of § 328 of the Penal Code, 1937 ed.[1] The information alleged that on September 26, 1952, while driving a jeep from Mayagüez to San Germán, the defendant "... . illegally, wilfully, maliciously and criminally, without observing due prudence, care and circumspection, with gross negligence and carelessness, consisting of driving the said motor vehicle at an excessive speed, making zig-zags and without taking into account the width of the Mirasol Bridge, which crosses the Estero River, at the said site, let the said jeep collide against the sides of the said bridge, and as a result of the collision the jeep tilted throwing . . . Nathaniel Torres Lugo into the water . . . which

---

[1] Section 328 reads as follows: "Every conductor, engineer, brakeman, switchman, or other person having charge wholly or in part of any railroad car, locomotive, automobile, train or steamboat, and any train dispatcher, telegraph operator, station agent, or other person wholly or in part charged with the duty of dispatching or directing the movements of any such car, locomotive, automobile, train or steamboat, who, through gross negligence or carelessness, suffers or causes the same to collide with another car, locomotive, automobile, train or steamboat or with any other object or thing whereby the death of a human being is produced, is punishable by imprisonment in the penitentiary for a maximum term of five years. If as a consequence of the collision, injury is suffered by any person, such conductor, engineer, brakeman, switchman or other person shall be punishable by imprisonment in jail for a maximum term of two years, or by a maximum fine of one thousand dollars, or by both penalties in the discretion of the court."

caused the death of the said Nathaniel Torres Lugo . . .".
The defendant was convicted in the Superior Court after a
trial by the court without a jury. He has appealed from
the judgment sentencing him to imprisonment of six months
to a year.

■■ The first assignment is that the trial court erred
in permitting the People to present circumstantial evidence
on the fact of the death of Torres. According to the defend-
ant, § 206 of the Penal Code requires direct—not circum-
stantial—proof of that fact.[2]

It is undisputed that only circumstantial evidence as to
the fact of the death of Torres was introduced in this case.
We must therefore determine if § 206 applies where as here
the charge is violation of § 328. Section 206 provides on
its face that it shall apply to "murder or manslaughter".
This court is therefore not authorized by judicial fiat to
extend its provisions to the different statutory offense estab-
lished by § 328.

We cannot agree with the defendant that because § 206
applies to the crime of involuntary manslaughter it neces-
sarily applies to charges under § 328. We need not re-
examine our statement in *People* v. *Lebrón*, 23 P.R.R. 611,
on which the defendant relies, that § 203, relating to man-
slaughter, and § 328 are "correlated". Be that as it may,
§ 206 having provided for an exception to the general rule
as to the type of proof which may be adduced to show a
certain fact, this exception must be confined to those cases
specifically provided in § 206; *i. e.*, murder and man-
slaughter. Crawford on *Statutory Construction*, § 299,
pp. 609–10.[3]

---

[2] Section 206 reads as follows: "No person can be convicted of murder
or manslaughter unless the death of the person alleged to have been
killed, and the fact of the killing by the defendant as alleged, are estab-
lished as independent acts; the former by direct proof and the latter
beyond a reasonable doubt."

[3] We note in passing that § 206 has no equivalent in the California
Penal Code. Only three other jurisdictions have statutes similar to § 206.

■ The second assignment is that the trial court erred in concluding that Torres died on the date and under the circumstances alleged in the information.

Teodoro Vázquez Romero—one of the passengers in the jeep—testified that after they collided with the bridge, he saw one Egipciaco—another passenger—lying on the road; that the defendant came out of the river drenched; that he did not see Torres, but as the latter did not appear, he began to yell toward the river "hey hey" to see if Torres would answer; that when the defendant got out of the water, he said, "one is missing; my best friend is missing" and wanted to jump in the water.

Diego Ortega, a police corporal, testified that when he investigated the accident herein before daybreak of September 26, 1952, he found the bridge destroyed and blood at the place where the railing had been broken; that the jeep was destroyed; that he, Lieutenant Irizarry, and others spent the whole morning trying to find Torres; that the search continued for two or three weeks, with the help of the Army Engineers; that the latter used dynamite to blow up a fence in the river in order to facilitate the search; and that the defendant stated to him before daybreak of the day of the accident that when he collided with the bridge, the car tilted and "threw him and Torres out."

The parties stipulated that Felipe Marchand González, district attorney of Mayagüez at the time of the accident, would have testified that he, the police, and the Army Engineers made an intensive but unsuccessful search of Estero River for Torres' body during several days after the accident occurred; that they used divers who went down to the bottom of the river, and blew up the fences of the river with dynamite.

Torres' mother testified that at the time her son and

These statutes have been severely criticized as a "condonation of all murders" in which the murderer has successfully destroyed his victim's body. VII Wigmore on *Evidence*, 3d ed., § 2081, p. 423.

his wife lived with her; that since September 26, 1952, she had not seen her son or received any letters from him or news of him. Torres' wife testified to the same effect. She added that it was not Torres' custom to abandon her; that he was away from home only "when he was in Korea"; that he wrote her every day from Korea; that "he was crazy" about the older son whom he had not seen since September 25, 1952; and that he had never seen their second son, who was born after the date of the accident.

We agree with the defendant that *Caraballo* v. *Industrial Commission*, 51 P.R.R. 157, which the trial court mentioned in its colloquy with counsel on this question, is not strictly in point. The *Caraballo* case was a civil case in which the measure of proof is different; in addition, it was a workman's compensation case, where the courts are as liberal as possible in granting compensation. Nevertheless, we think the trial court did not err in concluding from the foregoing testimony that Torres was killed on the date and under the circumstances alleged in the information.

The defendant argues, citing 26 Am. Jur. § 482, p. 490 and VII Wigmore, *supra*, § 2081, that even in those jurisdictions which permit proof of the fact of death by circumstantial evidence, such proof must be of such a nature that it excludes any other reasonable conclusion. We have reversed our cases which laid down such a rule on the question of circumstantial evidence in general. *People* v. *Bonilla, ante*, decided today. We see no reason for a different rule as to the specific question of the fact of death. In both instances the proper test is whether the trier of the facts is convinced beyond a reasonable doubt.

Moreover, even under the test advocated by the defendant, the testimony supported the conclusion reached by the trial court on this question.[4] We think the trial court was en-

---

[4] The defendant himself, in his sworn statement to the district attorney the day after the accident, stated that he saw Torres' body fall into the swollen river and that the latter drowned.

titled to conclude that Torres died either by virtue of the impact received against the bridge or by drowning. We find no reasonable basis for saying, as the defendant argues, that the evidence ". . . does not exclude the logical possibility that at some point the relation of cause and effect between the alleged criminal negligence of the defendant and the presumed death of the said Nathaniel Torres Lugo was cut by some other intervening factor of the many which customarily occur in the ordinary course of human experience." The defendant points to no such reasonably possible intervening factor under the circumstances of this case and we find none in the record.

The defendant next argues that the trial court erred in overruling his motion for a nonsuit and in finding him guilty beyond a reasonable doubt. As the defendant presented no testimony, we consider both of these points together.

The *Fiscal* of this court correctly summarizes the testimony of the People as tending to show that on the night in question, accompanied by Vázquez Romero, Torres, and another person, the defendant "was driving . . . a 'jeep' on the road from Cabo Rojo to San Germán (T. E. 79); that upon reaching the Estero River, Busigó 'lost control' of the 'jeep' and collided with the bridge (T.E. 36–37 and 67); that the vehicle 'skidded', 'faced in the opposite direction and tilted', and threw Busigó and those accompanying him out of the car (T. E. 80); that the bridge is between two curves, is narrow and two cars cannot pass on it (T. E. 79); that as a result of the collision the bridge was destroyed on the right side (T. E. 57) and the vehicle destroyed and the top smashed (T. E. 57–8)." The People also introduced in evidence pictures showing the damage to the bridge and the destruction of the railing as a result of the collision.

In affirming a judgment of conviction under § 328 in *People* v. *Rivera*, 69 P.R.R. 500, we laid down two prin-

ciples which furnish guidance here. First—Excessive speed, as pointed out at p. 504, may be established by the consequences of the impact when an automobile collision occurs. Second—"Evidence as to the force of the impact of a collision may be, *by itself,* or in connection with other circumstances, of sufficient force to warrant a conclusion that there was negligence as to the speed of the vehicle." *People* v. *Rivera, supra,* p. 504. (Italics ours.)

It is true that under § 328 gross negligence or carelessness must be established rather than ordinary lack of care. *People* v. *López,* 77 P.R.R. 573, footnote 4. But the evidence here meets this requirement. The speed at which the jeep was travelling—as shown by the impact of the collision and the results thereof—the position of the jeep after the accident, and the manner in which the defendant and Torres were thrown from the jeep into the river justify the conviction of the defendant under § 328. In *People* v. *Rodríguez,* 70 P.R.R. 21, we held that the evidence was sufficient to support a verdict of guilty under somewhat similar facts. See *People* v. *Piñeiro,* 77 P.R.R. 502; *People* v. *Bastián,* 71 P.R.R. 789; *People* v. *Pagán,* 49 P.R.R. 423.

Finally, the defendant complains of the action of the trial court in overruling his motion filed subsequent to conviction which prayed in the alternative for a new trial or for a reopening of the case for the presentation of testimony by the defendant. The defendant did not appeal from the order insofar as it denied a new trial. We therefore cannot consider it. *People* v. *Serbiá,* 75 P.R.R. 370.

The order, to the extent that it refused to reopen the case, is likewise not before us as the trial court refused to include it in the record ". . . because it is not part of the judgment appealed from." The defendant has attached the motion and its supporting affidavits to his brief. But this of course does not make the documents a part of the record

on appeal. As the defendant failed to take the appropriate steps to include these documents in the record on appeal, the question of reopening of the case is not before us. In any event, such action was in the discretion of the trial court and the defendant would be required to demonstrate to us that it had abused its discretion.

The judgment of the Superior Court will be affirmed.

Mr. Justice Belaval, dissented.

---

ORDER

San Juan, Puerto Rico, June 7, 1955.

Although the Court adheres to the legal principles stated in its opinion in the instant case, considering the circumstances revealed by the record as to the facts, the judgment of March 31, 1955 of this Court is set aside, the judgment appealed from rendered on December 14, 1953 by the Mayagüez Part of the Superior Court of Puerto Rico is reversed, and the case remanded to that court for a new trial.

It was so ordered by the Court as witness the signature of the Chief Justice. Mr. Justice Belaval took no part.

A. C. SNYDER,
*Chief Justice.*

I certify:

IGNACIO RIVERA,
*Secretary.*